IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ALTO-SHAAM, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 7:09-CV-018-O |
| v. | § | |
| | § | |
| CLEVELAND RANGE, LLC and | § | |
| CONVOTHERM ELEKTROGERATE | § | |
| GMBH, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This patent infringement action concerns the invention of a commercial combination smoker oven, which is a combination convection, radiant heat and steam-generating oven that incorporates a smoker assembly inside the oven cavity for smoking food.   In this memorandum opinion, the Court construes certain disputed claim terms.  The parties have submitted the following legal briefs and appendices pertaining to claim construction, which the Court has considered:

- Joint Claim Construction and Prehearing Statement and Exhibit A thereto (Joint Claim Construction Chart), filed November 23, 2009 (doc. #47);

- Brief in Support of Alto-Shaam, Inc.'s Proposed Claim Construction, filed January 22, 2010 (doc. #67) ("Pl. Opening Brief");

- Defendants' Opening Claim Construction Brief (doc. #68) ("Def. Opening Brief"), and Appendix thereto (doc. #69) ("Def. Opening App."), filed January 22, 2010;

- Defendants' Claim Construction Response Brief (doc. #76) ("Def. Resp. Brief"), and Appendix thereto (doc. #77) ("Def. Response App."), filed February 25, 2010;

- Plaintiff Alto-Shaam's Response to Defendants' Opening Claim Construction Brief (doc. #78) ("Pl. Resp. Brief"), filed February 25, 2010, and Appendix thereto ("Pl. Resp. App.")(filed under seal on February 25, 2010); and

- Joint Claim Construction Chart, filed March 16, 2010 (doc. #84).

## I.

The Court only sets forth those background facts necessary to provide the context for its claim construction. Plaintiff-counterdefendant Alto-Shaam, Inc. ("Alto-Shaam") holds United States Patent No. 7,157,668 (the "'668 Patent"), entitled OVEN INCLUDING SMOKING ASSEMBLY IN COMBINATION WITH ONE OR MORE ADDITIONAL FOOD PREPARATION ASSEMBLIES, issued on January 2, 2007, and United States Patent No. 7,317,173 (the "'173 Patent"), entitled OVEN INCLUDING SMOKING ASSEMBLY IN COMBINATION WITH ONE OR MORE ADDITIONAL FOOD PREPARATION ASSEMBLIES, issued on January 8, 2008. The '668 Patent and the '173 Patent both relate to a cooking apparatus, specifically a commercial combination convection, radiant heat and steam-generating oven that incorporates a smoker assembly inside the oven cavity for smoking food. The '173 Patent is a continuation of the '668 Patent, and the parties do not dispute that each has a substantially identical disclosure.

The patents disclose a commercial oven "capable of performing multiple food preparation processes." Def. Opening App. at 18 (col. 1, ll. 18-19). Specifically, the patents disclose an oven capable of using a first-food preparation process (such as radiating heat in combination with steam or forced air convection), as well as a second food preparation process (consisting of heated smoke). *Id.* at 21(col. 2, ll. 18-24). Further, the patents disclose an oven capable of operating the first food preparation assembly simultaneously with the smoking assembly or separate from the smoking

assembly.  *Id.* (col. 2, ll. 24-27); *see also id.* at 26 (col. 12, ll. 15-19).  According to the patents, the ability to use various cooking methods (convection, steam or radiation) to cook the raw meat faster than traditional smoker ovens, and the ability to provide the smoke flavor at the same time, makes the invention "more versatile than conventional ovens"  *Id.* at 26 (col. 12, ll. 15-19); *see also id.* at 21 (col. 2, ll. 4-9).  The '668 Patent names Janus Bartelik as inventor and Alto-Shaam as assignee. The '173 Patent names Janus Bartelick, William J. Hansen and Patrick A. Willis as inventors and Alto-Shaam as assignee.

Alto-Shaam sues Defendants-counterplaintiffs Cleveland Range, LLC and Convotherm Elektrogeräte GmbH (sometimes collectively referred to as, "Defendants"), alleging that Defendants are directly and literally infringing the '668 Patent and the '173 Patent by manufacturing, maintaining and selling various combination oven-steamers that embody a direct steam and smoker process, including Defendants' model OES-6.20SMK, all in violation of 35 U.S.C. §§ 1 *et seq*. (Doc. #10, First Am. Compl.)  Defendants deny any infringement and, in addition to asserting numerous affirmative defenses, have counterclaimed seeking, among other things, a declaration that they are not infringing the '668 Patent and the '173 Patent, and that the '668 and '173 Patents are invalid and unenforceable because of, among other things, inequitable conduct before the United States Patent and Trademark Office ("PTO").  (*See* Doc. #89, Convotherm Elektrogeräte GmbH's First Am. Ans. & Counterclaim; Doc. #90, Cleveland Range, LLC's First Am. Ans & Counterclaim).[1]  Defendants have also alleged breach of contract by Alto-Shaam, based on a license agreement between Alto-Shaam and Convotherm Elektrogeräte GmbH pertaining to combination ovens.

---

[1]Pursuant to an August 24, 2009 Protective Order, these pleadings were filed under seal.  (*See* Doc. #37, Agreed Protective Order).

**Memorandum Opinion and Order - Page 3**

Only the meaning of certain claim limitations within Claim 11 in the '668 Patent and Claim

1 in the '173 Patent are at issue. This Court need only construe the disputed claim limitations. *Vivid*

*Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803-05 (Fed. Cir. 1999).

## II.

Patent infringement is the unauthorized making, using, selling, offering to sell, or importing

into the United States of any patented invention during the term of the patent. 35 U.S.C. § 271(a).

Patent infringement analysis involves two steps.  First, the court determines the proper construction

of the patent claims by establishing, as a matter of law, the scope and boundaries of the subject

matter that is patented. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995)

(en banc), *aff'd*, 517 U.S. 370, 384-85 (1996).  Second, the trier of fact compares the properly

construed claims to the allegedly infringing device(s) and determines whether there has been an

infringement.  *Id*.  The issue before the Court at this time is construction of various claims of the

'668 and '173 patents.

Claim construction "is the judicial statement of what is and is not covered by the technical

terms and other words of the claims."  *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1352 (Fed.

Cir. 2001); *see also United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir.

1997).  The claims of a patent are the numbered paragraphs at the end of the patent that define the

scope of the invention, and thus the scope of the patentee's right to exclude others from making,

using, or selling the patented invention.  *Astrazeneca AB v. Mutual Pharmaceutical Co.,* 384 F.3d

1333, 1336 (Fed. Cir. 2004).

The words of a claim "are generally given their ordinary and customary meaning."  *Phillips*

*v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*,

90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Ordinary and customary meaning is "the meaning that the

term would have to a person of ordinary skill in the art in question at the time of the invention[.]"

*Id.* at 1313.  "In some cases, the ordinary meaning of claim language as understood by a person of

skill in the art may be readily apparent even to lay judges, and claim construction in such cases

involves little more than the application of the widely accepted meaning of commonly understood

words." *Id.* at 1314.  When the ordinary and customary meaning of a term is not readily apparent,

"the court looks to 'those sources available to the public that show what a person of skill in the art

would have understood disputed claim language to mean.'"  *Id.* (quoting *Innova/Pure Water, Inc.*

*v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  Those sources

include the words of the claims themselves, the patent specification, the prosecution history, and

extrinsic evidence.  *Id.*  "The claims, of course, do not stand alone. Rather, they are part of 'a fully

integrated written instrument,' consisting principally of a specification that concludes with the

claims.  For that reason, claims 'must be read in view of the specification, of which they are a part.'"

*Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979).

        Section 112 of the Patent Act, 35 U.S.C. § 112, states that the specification:

>         shall contain a written description of the invention, and of the manner
>         and process of making and using it, in such full, clear, concise, and
>         exact terms as to enable any person skilled in the art to which it
>         pertains, or with which it is most nearly connected, to make and use
>         the same, and shall set forth the best mode contemplated by the
>         inventor of carrying out his invention.

35 U.S.C. § 112.  "The specification is always highly relevant to the claim construction analysis.

Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415

F.3d at 1315.  "The specification 'acts as a dictionary when it expressly defines terms used in the

claims or when it defines terms by implication.'" *Id.* at 1321 (quoting *Vitronics*, 90 F.3d at 1582).

In addition to the specification, a court should consider prosecution history, if it is in evidence, to aid in determining the meaning of disputed claim terms. *Phillips*, 415 F.3d at 1317. The prosecution history is part of the intrinsic record and consists of a complete record of all proceedings before the PTO, including prior art cited during the examination of the patent, and express representations made by the applicant as to the scope of the claims. *Vitronics,* 90 F.3d at 1582.

Although emphasizing the importance of intrinsic evidence in claim construction, "[the Federal Circuit] also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman,* 52 F.3d at 980). Dictionaries and treatises can be "useful in claim construction[,]" particularly technical dictionaries which may help the court "'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms." *Id.* at 1318 (quoting *Vitronics*, 90 F.3d at 1584 n. 6).

As to extrinsic evidence in the form of expert testimony, the Federal Circuit has opined:

> [E]xtrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

*Id.* However, "a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" *Id.* (quoting *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed. Cir. 1998)).

Extrinsic evidence, however, while it can shed useful light on the relevant art, "is less significant than the intrinsic record in determining the legally operative meaning of claim language."

*Id.* at 1317 (internal citations and quotations omitted).  "[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the indisputable public records consisting of the claims, the specification and the prosecution history, thereby undermining the public notice function of patents."  *Id.* at 1319 (citation and internal quotations omitted).

### III.

### A.     The Disputed Claim Limitations

The parties have presented four claim terms for construction, two from each patent.

Claim 11 of the '668 patent recites (with the claim limitations at issue emphasized in bold):

> 11. An oven capable of preparing food product utilizing a first and second food preparation process, the oven comprising:
>
> a heating cavity defining an interior including an apparatus for supporting food product disposed therein, and a door providing selective access to the interior;
>
> **a first food preparation assembly operable to prepare raw food product using steam and at least one of radiating heat and forced air convection;**
>
> **a smoking assembly configured to deliver heat to an aromatic smoke producing media that emits smoke into the heating cavity in response to the delivered heat**; and
>
> a closed ventilating system that drains liquids produced during food preparation from the interior while preventing gasses from escaping from the interior when the interior is pressurized below a threshold pressure;
>
> wherein the oven is capable of operating the first food preparation assembly simultaneously with the smoking assembly or separately from the smoking assembly;
>
> wherein the heated cavity is configured to be a closed system so that air inside the heating cavity is not continuously in direct communication with air outside the oven.

Def. Opening App., Ex. 1 at 27 (col. 13, l. 56-col.14, l. 11) (emphasis supplied).

Claim 1 of the '173 patent recites (with the limitations at issue emphasized in bold):

1. A combination oven capable of preparing food product, the combination oven comprising:

a heating cavity defining an interior including an apparatus for supporting food product disposed therein;

a door providing selective access to the interior;

a first food preparation assembly **comprising a steam assembly selectively providing steam into the interior to prepare food** and a heat assembly selectively heating the interior to prepare food using at least one of radiating heat and forced air convection,

the heat assembly comprising a heating element disposed in the heating cavity and an air mover capable of forcing incoming air across the heating element to produce heated air that is delivered to the interior of the heating cavity,

**the steam assembly comprising a steam producing assembly capable of delivering liquid across the heating element that transforms the liquid into steam that is delivered to the interior of the heating cavity; and**

**a smoking assembly selectively delivering smoke into the interior independently of the first food preparation assembly**; and

a drain system configured to drain liquids produced during food preparation from the interior while preventing gasses from escaping from the interior when the interior is pressurized below a threshold pressure.

*Id.*, Ex. 2 at 52 (col 12, ll. 43-67) (emphasis supplied).

**B.    Discussion**

In its opening brief, Alto-Shaam asserts that "the claim terms in its patents should be construed according to their ordinary meaning[.]" Pl. Opening Brief at 1.  By contrast, Defendants contend in their opening brief that these claim terms should be construed as means-plus-function limitations under 35 U.S.C. § 112, ¶ 6 since "each of the limitations at issue fails to identify a sufficiently definite structure[.]" Def. Opening Brief at 10.  In response, Alto-Shaam contends that

since none of the limitations at issue in the '668 and '173 Patents use the term "means," "they are presumptively not means-plus-function limitations." Pl. Resp. Brief at 1 (citing *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004)).  According to Alto-Shaam, "[t]hroughout their Opening Brief, Defendants attempt to minimize the force of this presumption and improperly shift the burden to Alto-Shaam.  In the end, Defendants fail to overcome the strong presumption against means-plus-function." *Id.*   By contrast, in their response to Alto-Shaam's opening brief, Defendants argue that: "None of the four disputed limitations discloses definite structure within the asserted claims.  Instead, each disputed limitation uses the generic term, 'assembly.'  Claims that merely use generic terms and do not include any <u>definite</u> <u>structure</u> are means-plus-function limitations."  Def. Resp. Brief at 1 (original emphasis)(citing *Mass. Inst. of Tech. and Elecs. for Imaging, Inc. v. Abacus Software* ("*M.I.T.*"), 462 F.3d 1344, 1353-54 (Fed. Cir. 2006)).  Defendants further argue that "Plaintiff is not entitled to a construction that covers every conceivable structure for performing the functions recited in the claim." *Id.* (citing *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1214 (Fed. Cir.1998)).  In support of their respective positions, the parties rely on intrinsic and extrinsic evidence, as well as the same body of case law.[2] The Court necessarily begins with an analysis of the controlling case law.

### 1.    Means-Plus-Function Claiming

Pursuant to 35 U.S.C. § 112, ¶ 6, a patentee is permitted to express a claim limitation by reciting a function to be performed by some generic "means," instead of reciting in the claim the actual structure for performing that function.  Specifically, section 112, ¶ 6 provides:

---

[2]Each party also presents the argument that its opponent frustrated the purpose of the Court's scheduling order by failing to include evidence they intended to rely upon in the Joint Claim Construction Chart, and that the Court would be within its discretion to disregard the tardy designations.  *See* Def. Resp. Brief at 14 and n.5; Pl. Resp. Brief at 15 and n.9.  This line of argument will not be considered by the Court, given that both parties fell short of following the Court's instructions.

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6 (1994).  Section 112, ¶ 6 thus "operates to restrict claim limitations drafted in such functional language to those structures, materials, or acts disclosed in the specification (and their equivalents) that perform the claimed function." *Personalized Media Comm's, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703 (Fed. Cir. 1999).  "The point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).[3]

"The task of determining whether the limitation in question should be regarded as a means-plus-function limitation, like all claim construction issues, is a question of law for the court, even though it is a question on which evidence from experts may be relevant." *Lighting World*, 382 F.3d at 1358 (citations omitted).  The court in *Lighting World* delineated the standard to be used by courts to determine whether to apply section 112, ¶ 6 to a disputed claim limitation:

> A claim limitation that actually uses the word "means" invokes a rebuttable presumption that § 112 ¶ 6 applies. By contrast, a claim term that does not use "means" will trigger the rebuttable presumption that § 112 ¶ 6 does not apply. The use of the term "means" is central to the analysis because the term "means,"

---

[3]Claim construction of a means-plus-function limitation has two steps: "First, the court must determine the claimed function.  Second, the court must identify the corresponding structure in the written description of the patent that performs that function." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006).  The claimed function is recited in the claim itself, and the corresponding structure "must not only perform the claimed function [but] the specification must clearly associate the structure with the performance of the function." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002). In the event the Court applies section 112, ¶ 6 to the disputed claim terms, the parties have agreed to the corresponding structure disclosed in the '668 Patent and '173 Patent.  *See* Joint Claim Construction and Prehearing Statement at 2 ("If the Court determined that means-plus-function analysis is appropriate, Alto-Shaam agrees to accept Defendants' proposed constructions with respect to the corresponding structure.").

**Memorandum Opinion and Order - Page 10**

particularly as used in the phrase "means for," is part of the classic template for functional claim elements and has come to be closely associated with means-plus-function claiming.

The presumption that a limitation lacking the term "means" is not subject to section 112 ¶ 6 can be overcome if it is demonstrated that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function. *Our cases make clear, however, that the presumption flowing from the absence of the term "means" is a strong one that is not readily overcome.*

*Id.* at 1358 (internal punctuation and internal citations omitted) (emphasis added).  This presumption stems from the fact that section112, ¶ 6 "provides that an element in a claim for a combination 'may be expressed' as a means for performing a function, which indicates that the patentee is afforded the option of using the means-plus-function format.  The question then is whether, in the selection of claim language, the patentee must be taken to have exercised that option." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996)(quoting section 112, ¶ 6).

In *Greenberg*, the Federal Circuit found that the district court erred in characterizing "detent mechanism" as a means-plus-function limitation.  In so ruling, the court noted, among other things, that dictionary definitions made "clear that the noun 'detent' denotes a type of structure with a generally understood meaning in the mechanical arts, even though the definitions are expressed in functional terms . . . It is true that the term 'detent' does not call to mind a well-defined structure, but the same could be said of other commonplace structural terms such as 'clamp' or 'container.'" *Greenberg*, 91 F.3d at 1583 (reciting several dictionary definitions of "detent" including "a mechanism that temporarily keeps one part in a certain position relative to that of another, and can be released by applying force to one of the parts.").

In *Lighting World*, notwithstanding the ruling in *Greenberg* that the disputed claim term need not call to mind a specific structure to avoid the ambit of section 112, ¶ 6, the trial court applied

section 112, ¶ 6 to the phrase "connector assembly," adopting defendants' argument therein that "in order to be regarded as structural for purposes of section 112, ¶ 6, a claim limitation must identify a specific structure and not use a generic term that includes a wide variety of structures." *Lighting World*, 382 F.3d at 1359 (citing the district court opinion).   Reversing the district court's decision as "unduly restrictive," the Federal Circuit rejected the premise upon which the district court based its decision, namely, that "connector assembly" was not structural because "it would cover every conceivable structure that could connect two elements and pivot." *Id.*  Instead, the Federal Circuit found that the term "connector assembly" provided sufficient structure, and therefore did not fall within the ambit of section112, ¶ 6.  *Lighting World*, 382 F.3d at 1360-63.  Looking to various dictionary definitions of the term "connector," which modified "assembly," the court found that "connector" has a "reasonably well-understood meaning as a name for structure, even though the structure is defined in terms of the function it performs." *Id.* at 1361 ("connector" defined as "any of various devices for connecting one object to another" and "connect" defined as "to join, fasten, or link together usu. by means of something intervening").  From these definitions, the court held that the term "connector assembly" "means a unit that joins, fastens, or links each pair of adjacent support members."  In so holding, the court stated:

> In considering whether a claim term recites sufficient structure to avoid application of section 112 ¶ 6, we have not required the claim term to denote a specific structure. Instead, we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.

*Id.* at 1359-60.  The *Lighting World* court further stated: "'[T]he fact that a particular mechanism . . . is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6).'" *Id.* at

1360 (quoting *Greenberg*, 91 F.3d at 1583). Further, in reaching its conclusion that "connector assembly" did not fall within the purview of section 112, ¶ 6, the court noted:

> [W]hile it is true that the term "connector assembly" does not bring to mind a particular structure, that point is not dispositive. What is important is whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term "means for."

382 F.3d at 1360.

In reaching its decision, the *Lighting World* court added that, in light of the principles enunciated in its ruling reversing the district court (*see supra*), "it is not surprising that we have seldom held that a limitation not using the term 'means' must be considered to be in means-plus-function form.  In fact, we have identified only one published opinion since *Greenberg* in which we have done so, and that case provides a useful illustration of how unusual the circumstances must be to overcome the presumption that a limitation lacking the word 'means' is not in means-plus-function form.  That exceptional case is *Mas-Hamilton*."  *Id.* at 1362.

In *Mas-Hamilton*, the Federal Circuit held that "lever moving element"and "movable link member" recited in a patent involving a high security lock did not define structure, in that the phrases did not have a well understood structural meaning in the art, and the terms in the claim limitations did not provide any structure as necessary to remove the limitation from the ambit of section 112, ¶ 6.  *Mas-Hamilton*, 156 F.3d at 1213-15.   Based on the entire record, the *Mas-Hamilton* court found that the terms "element" and "member" were mere proxies for the term "means for" and the presumption flowing from the absence of the term "means for" was overcome. *See id.*

In addition to pointing out the "exceptional" nature of that case, the court in *Lighting World* distinguished *Mas-Hamilton*, finding that the term "connector assembly," unlike "lever moving

element" and "movable link member," had an understood structural definition in the relevant art, as defined by the patent specification, dictionaries, and expert testimony. *See Lighting World*, 382 F.3d at 1363. The court further distinguished *Mas-Hamilto*n since the prosecution record showed that the patentee in that case, unlike the patentee in *Lighting World*, had used the terms "element," "member," and "means" interchangeably, and in the patent itself the patentee described the "lever moving element" and the "movable link member" as the "[m]eans . . . for" moving the lever, and the "[m]eans . . . for releasably maintaining the pivotable lever in a position substantially disengaged." *Id.* at 1362 (internal citation omitted).

By way of contrast to the phrase "connector assembly," following the *Lighting World* decision, the Federal Circuit held in *M.I.T.* that the term "colorant selection mechanism" failed to connote sufficient structure to a person of ordinary skill in the art, and therefore the patentee could not avoid the application of section 112, para. 6." *M.I.T., 462* F.3d at 1354. The court in that case reiterated that the terms 'mechanism,' 'means,' 'element,' and 'device,' typically do not connote sufficiently definite structure" to avoid application of section 112, ¶ 6. *Id.* (citation omitted). The court further stated, however, that "[c]laim language that further defines a generic term like 'mechanism' can sometimes add sufficient structure to avoid 112 ¶ 6." *Id.* On the record before it, though, the court concluded that "colorant selection," unlike "detent" in *Greenberg*, failed to add sufficient structure to define the term "mechanism," rendering section 112, ¶ 6 applicable. *Id.* ("In contrast [to 'detent'], the term 'colorant selection,' which modifies 'mechanism' here, is not defined in the specification and has no dictionary definition, and there is no suggestion that it has a generally understood meaning in the art.")

Thereafter, in *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008), the Federal Circuit found the phrase "mechanism for moving said finger" subject to the means-plus-function limitation for, *inter alia*, the following reasons:

> The  applicant for the '254 patent could have supplied structural context to claim 1 in any number of ways. If claim 1 of the '254 patent had recited, e.g., a "finger displacement mechanism," a "lateral projection/retraction mechanism," or even a "clamping finger actuator," this court could have inquired beyond the vague term "mechanism" to discern the understanding of one of skill in the art. If that artisan would have understood such language to include a structural component, this court's analysis may well have turned out differently. Instead the applicant chose to express this claim element as "a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112 ¶ 6.

*Welker Bearing*, 550 F.3d at 1096-97.   The Court now turns to the disputed claim terms and construes them in light of this body case law.

## 2.      Analysis of Claim Limitations

### Claim 11 in '668 Patent

*"a first food preparation assembly operable to prepare raw food product using steam and at least one of radiating heat and forced air convection"*;

*"a smoking assembly configured to deliver heat to an aromatic smoke producing media that emits smoke into the heating cavity in response to the delivered heat"*

### Claim 1 in '173 Patent

*"a first food preparation assembly comprising a steam assembly selectively providing steam into the interior to prepare food"*;

*"the steam assembly comprising a steam producing assembly capable of delivering liquid across the heating element that transforms the liquid into steam that is delivered to the interior of the heating cavity"*; and

*"a smoking assembly selectively delivering smoke into the interior independently of the first food preparation assembly"*

As a threshold observation, these claim limitations clearly do not fit squarely within the standard means-plus-function analysis. Because the "first food preparation assembly" limitation and

the "smoking assembly" limitation in Claim 11 of the '668 Patent do not contain the words "means" or "means for," the Court begins with the strong presumption that section 112, ¶ 6 does not apply to this limitation.  *See Lighting World*, 382 F.3d at 1358.  Similarly, because the "steam assembly" limitation, the "first food preparation assembly" limitation and the "smoking assembly" limitation in Claim 1 of the '173 Patent do not contain the words "means" or "means for," the Court begins with the presumption that section 112, ¶ 6 does not apply to these limitations.  *See id.*  Further, the disputed claim terms do not contain the "generic terms 'mechanism,' 'means,' 'element,' and 'device,' [which] typically do not connote sufficiently definite structure" *See M.I.T.*, 462 F.3d at 1354 (quoting *Personalized Media Communications*, 161 F.3d at 704).  Accordingly, to overcome the strong presumption that section 112, ¶ 6 does not apply to these limitations, Defendants must "demonstrate[] that the claim term[s] fail[] to recite sufficiently definite structure or else recite[] function without reciting sufficient structure for performing that function." *Lighting World*, 382 F.3d at 1358.

>     *Defendants' Opening Brief*

To rebut the presumption that section 112, ¶ 6 does not apply, Defendants first contend that the claim limitations are defined in purely functional terms, rather than structural terms:

> Claim 11 of the '668 Patent does not recite sufficiently definite structure for the "first food preparation assembly," thus making this limitation a means-plus-function limitation.  The claim defines this limitation in functional terms by what it does, rather than by what it is.  The recited function is being "operable to prepare raw food product using steam and at least one of radiating heat and forced air convection."  This functional description says nothing about structure – it reveals merely that there be some means to prepare raw food product with steam and either heat or forced air convection.  The claim does not recite any definite structure for generating steam, generating radiating heat, or causing forced air convection.

Def. Opening Brief at 11 (original emphasis).  Defendants make the same argument with regard to the phrase "smoking assembly" in Claim 11.  *See id.* at 16 ("Claim 11 of the '668 Patent does not

recite sufficiently definite structure for the 'smoking assembly' limitation. An analysis similar to the one applied to the 'first food preparation assembly' applies . . . Claim 11 uses only functional language for this limitation, describing the limitation by what it does rather than by what it is.") Similarly, with regard to the disputed claim terms in Claim 1, Defendants' arguments are essentially the same. *See id.* at 18 ("Claim 1 of the '173 Patent also does not recite sufficiently definite structure for the 'steam assembly' limitation. An analysis similar to the one used for the 'first food preparation assembly' and the 'smoking assembly' limitations applies. First, Claim 1 again uses only functional language for this limitation, describing the limitation by what it does rather than what it is . . . None of the language discloses structure [.]"); *id.* at 19-20 ("For the same reasons discussed above with respect to the 'smoking assembly' limitation of Claim 11 of the '668 Patent, the 'smoking assembly' limitation of Claim 1 of the '173 Patent also is a means-plus-function limitation. While the stated function is slightly different (selectively delivering smoke into the interior independently of the first food preparation assembly), again the claim recites no definite structure to perform the function. Claim 1 defines this limitation in functional terms by what it does rather than by what it is.").

In addition, Defendants contend that the term "assembly," which is part of each disputed claim limitation, "is merely a generic term that does not connote sufficiently definite structure to avoid the application of § 112, ¶ 6 . . . Indeed, if the term 'means' were substituted for the term 'assembly,' there would be no difference in the ultimate construction of the claim." Def. Opening Brief at 11-12. According to Defendants, "the term 'assembly' is like the term 'mechanism' – standing alone it is a generic term that does not constitute sufficiently definite structure to avoid treatment under § 112, ¶ 6." *Id.* at 12-13. Further, Defendants argue that "the myriad ways the term 'assembly' is used in the '668 Patent demonstrates that the term is not a definite structure." *Id.* at

12.  Defendants point out that in the '668 patent, the term "assembly" is used 127 times, and in the specification is used "in connection with no less than 12 diverse types of structure[.]" *Id.*

Citing to *M.I.T.*, where the court held that "colorant selection mechanism" was not sufficiently structural to avoid application of section 112, ¶ 6, Defendants posit:

> In analyzing the term "mechanism" alone, the Court determined that it did not recite sufficiently definite structure, noting that the term "standing alone connotes no more structure than the term 'means.'" "Assembly" has been treated no differently.  In *Lighting World*, the Federal Circuit relied upon the dictionary definition of the term "connector" that demonstrated that it had a generally understood meaning, and, therefore, that "connector assembly" did recite definite structure.  Notably, the Federal Circuit did not even analyze the term "assembly" to determine if it had a generally understood meaning.  "Assembly" is generic, and the Federal Circuit has never suggested that the term "assembly," on its own, is a sufficiently definite recitation of structure."

Def. Opening Brief at 13 (internal citations omitted).

Defendants next argue that, unlike the terms "detent mechanism" in *Greenberg*, *supra*, and "connector assembly" in *Lighting World*, *supra*, where dictionary definitions showed the terms had sufficiently well understood structural meaning to persons of skill in the art, the addition of the modifiers "first food preparation," "smoking" and "steam," to the generic word "assembly" does not add sufficient structure.  *Id.* at 13-19.  According to Defendants, these are mere labels to differentiate the various types of assemblies, and these modifiers, which lack any dictionary definitions, are more akin to the modifier "colorant selection" in *M.I.T.*, *supra*, where the court found that the presumption against application of section 112, ¶ 6 had been rebutted.

In a further effort to rebut the presumption that section 112, ¶ 6 does not apply to the disputed claim terms, Defendants cite to the deposition testimony of one of the patents' named inventors, Janus Bartelick.  *See* Def. Opening Brief at 15 ("Named inventor Janus Bartelick agrees that Claim 11 does not disclose any definite structure and, instead, that Claim 11 would read on any

combination oven ('combi oven') having any structure that performs the recited function.") The deposition transcript provides:

Q.    . . .  [T]his is your issued patent I'm now talking about.  It says "first food preparation assembly operable to prepare raw food product using steam in at least one of radiating heat and forced air convection."  Do you understand what that means?

A.    Yes, I do understand that you can cook in either steam, convection, or the combination of steam and convection.

Q.    And you understand that that would cover anything that you used to generate steam, radiating heat or forced air convection as long as you could cook with steam and either heat or forced air convection?

A.    This means basic functions of the combination oven, that you can cook in steam, convection or the combination of two.

Q.    Right.  And you understand the claim to cover anything that would perform those basic functions?

A.    In the combi oven, yes.

Def. Opening App. at 152-153 (Ex. 7).  Defendants conclude: "Thus, named inventor Bartelick agrees that the claim is described in terms of its function, rather than in terms of its structure."  Def. Opening Brief at 15.[4]

---

[4]Defendants also seek to introduce deposition testimony from Janus Bartelick regarding the "smoking assembly" in Claim 11, contending that the testimony shows that Mr. Bartelick agrees that the claims do not disclose any structure, but are purely functional. *See* Def. Opening Brief at 16-18. Alto-Shaam contends that Defendants have selectively quoted from Mr. Bartelick's deposition, and that "taken in context, Defendants' characterization of Mr. Bartelick's testimony is without support." Pl. Resp. Brief at 11-12.  Having read the portion of Mr. Bartelick's deposition in dispute (*see* Pl. Resp. App. at 1113-1115, 1116-1117), while it appears that Alto-Shaam is likely correct that Mr. Bartelick is testifying that the smoking assembly and/or smoker box could be internal or external, the testimony is, at best, ambiguous. The Court will therefore not consider it.

*Alto-Shaam's Response*

In response, Alto-Shaam contends that Defendants have failed to rebut the strong presumption against means-plus-function claiming.  In support, Alto-Shaam argues that case law cited by Defendants is distinguishable or inapplicable, that reliance on Janus Bartelick's testimony is misplaced, that the specifications show that the disputed claim terms denote structure[5], and that Alto-Shaam exercised its option to not claim in means-plus-function form.  In further support, Alto-Shaam introduces a dictionary definition of "assembly," as well as the Declaration of named inventor William Hansen.

With regard to case law, Alto-Shaam contends that "first food preparation assembly," "smoking assembly," and "steam assembly," "refer to structures that take their names from the function they perform [and] [t]hese terms are therefore more like the 'connector assembly' in *Lighting World* than the 'lever moving element' or 'movable link member' of *Mas-Hamilton*.  *Mas-Hamilton* therefore has no bearing on the issues in this case."  Pl. Resp. Brief at 6.  Alto-Shaam also distinguishes *Mas-Hamilton* since, as explained by the court in *Lighting World*, the prosecution record in that case showed that the patentee, unlike the patentee in *Lighting World*,  had used the terms "element," "member," and "means" interchangeably, and in the patent itself the patentee described the "lever moving element" and the "movable link member" as the "[m]eans . . . for" moving the lever, and the "[m]eans . . . for releasably maintaining the pivotable lever in a position substantially disengaged."  *Lighting World*, 382 F.3d at 1362 (internal citation omitted).  Similarly, in *M.I.T.*, in reaching its decision that "colorant selection mechanism" was subject to section 112, ¶ 6, the court gave weight to the fact that the patentee had used the terms "mechanism" and "means"

---

[5]Alto-Shaam points out that the disputed claim terms appear throughout the specifications and in the original patent applications, and the context indicates that "these terms are not used in a manner designed to invoke § 112, ¶ 6."  Pl. Resp. App. at 4.  In addition, Alto-Shaam points to Claim 1 and Claim 4 of the '668 Patent to demonstrate that the disputed claim terms from Claim 11 are used in a structural way, and makes a similar argument regarding the disputed claim terms in Claim 1 of the '173 Patent.  *Id.* at 5-6.

as synonyms. *See generally M.I.T.*, 462 F.3d at 1354.  No such evidence of synonymous usage is present in this case.  As to *Welker Bearing*, where the court held that "mechanism for moving said finger" was a limitation subject to means-plus-function treatment, Alto-Shaam argues that, unlike in that case, the "patent claims as a whole makes it abundantly clear that the term 'assembly' denotes structure."  Pl. Resp. Brief at 8.

As to Defendants' argument that  named inventor Janus Bartelick's deposition testimony regarding the term "first food preparation assembly" supports application of section 112, ¶ 6 to the disputed claim terms, Alto-Shaam argues that, based on the court's reasoning in *Lighting World*, Mr. Bartelick's testimony actually supports Alto-Shaam's proposed claim construction:

While the terms "connector" and "connector assembly" are certainly broad, and may in the end include any structure that performs the role of connecting, the same could be said of numerous other terms, such as "clamp," or "clip," or even "support member[.]" Those terms are routinely treated as structural by patent practitioners and courts, and we conclude there is no reason to treat the term "connector assembly" any differently for purposes of § 112, ¶ 6.

Pl. Resp. Brief at 9 (quoting *Lighting World*, 382 F.3d at 1361).   To review, Mr. Bartelick testified that "first food preparation assembly" could be any structure that performs the role of convection or combination steam and convection cooking in the combination oven.  *See* Def. Opening App. at 152-53.  Alto-Shaam argues that this testimony, contrary to Defendants' interpretation, is consistent with the court's reasoning in *Lighting World*.

Alto-Shaam also introduces extrinsic evidence in support of its argument that Defendants have failed to rebut the presumption that section 112, ¶ 6 does not apply to the disputed claim terms.  Specifically, Alto-Shaam introduces the Declaration of named inventor William Hansen.  *See* Pl. Resp. App., vol. 1 Ex. A (Declaration of William Hansen).  Mr. Hansen testified as follows:

A person with ordinary skill provided with nothing more than Alto-Shaam's patents would recognize that "smoking assembly" is a number of component pieces fitted together to form a whole capable of delivering heat to an aromatic smoke producing media.  A skilled artisan would also easily determine that the "steam producing assembly" is a number of component pieces fitted together to form a whole capable

of delivering liquid across the heating element which transforms the liquid into steam. A person of ordinary skill in the art of oven design is aware that combination ovens utilize multiple cooking processes to prepare food. Therefore, a person of ordinary skill would also understand that the "first food preparation assembly" is a number of component pieces fitted together to form a whole capable of cooking food using one cooking process – in this case convection heat, steam, and/or radiant heat – before a second food preparation process, such as smoke, is engaged to continue the cooking process.

*Id.* at 17 (Hansen Decl. ¶ 28).

Alto-Shaam has also submitted the definition of "assembly" contained in the SHORTER ENGLISH OXFORD DICTIONARY 133 (5th ed. 2002). *See* Pl. Resp. App. at 1105-1107 (defining "assembly" as "a collection of objects; *esp.* a number of component pieces fitted together to form a whole; a device consisting of numerous parts.").

*Defendants' Response to Alto-Shaam*

Defendants first contend that: "Plaintiff's reliance on *Lighting World* is misplaced. In that case the determination that a 'connector assembly' was not a means-plus-function limitation had nothing to do with the use of the term 'assembly.' The Federal Circuit held that 'connector' had a well-known structural meaning to persons of skill in the art in light of dictionary definitions of 'connector.' No similar evidence exists in this case." Def. Resp. Brief at 4-5.

As to Alto-Shaam's statement that the claims of the '668 Patent themselves recite sufficient structure for the "first food preparation assembly," Defendants point out that Alto-Shaam supports this proposition by citing to Claim 1 of the '668 Patent, when the Court is concerned with the recitation of "first food preparation assembly" in Claim 11. *Id.* at 6 ("Once again Plaintiff confuses the issue. The issue is whether the term 'first food preparation assembly' in **Claim 11** of the '668 Patent recites sufficient structure 'within the claim itself,' not whether sufficient structure is recited in other claims.") (original emphasis) (citations omitted). According to Defendants, "Claim 11 does not recite the structure that Plaintiff alleges is 'sufficient structure' for the 'first food preparation

assembly.'  By citing Claim 1, Plaintiff tacitly admits that Claim 11 does not recite sufficiently definite structure to avoid the application of 35 U.S.C. § 112, ¶ 6." *Id.* (quoting *Personalized Media Communications*, 161 F.3d at 704) ("the focus remains on whether the claim as properly construed recites sufficiently definite structure to avoid the ambit of   § 112, ¶ 6").

With regard to the extrinsic evidence, Defendants argue that the Court should give little weight to Mr. Hansen's declaration, deeming it self-serving and conclusory.  *See* Def. Resp. Brief at 1, 7-8.  Defendants further argue that Mr. Hansen's testimony actually supports application of means-plus-function limitations, since he asserts that a person of skill in the art would understand all of the disputed claim limitations as a "number of component pieces" that collectively perform the functions cited in the claim.  *Id.* at 1.  According to Defendants, Mr. Hansen's "view would encompass every conceivable structure for performing the functions recited in the claim [and] Plaintiff is not entitled to such a construction[.]"  *Id.* at 7 (citing *Mas-Hamilton*, 156 F.3d at 1214).

With regard to the dictionary definition introduced by Alto-Shaam, Defendants assert that an "assembly" is defined as a generic structure, "a collection of objects" or a "device consisting of numerous parts."  Defendants cite to numerous cases where the term "device," like "mechanism," was held to be a generic term lacking sufficient structure to avoid the ambit of section 112, ¶ 6.  *Id.* at 7 (citations omitted).  Defendants contend: "To the extent that Plaintiff is arguing that it somehow escapes means-plus-function treatment because an assembly has multiple parts instead of a single part, that argument is baseless."  *Id.*

 Further, to counter Alto-Shaam's argument that the disputed claim terms should be given their ordinary meaning, Defendants introduce the deposition testimony of one of the named inventors, Patrick Willis, who testified that he is not familiar with the disputed claim terms in this case:

Q.     Do you know what that term means, "first food preparation apparatus"?

A.     No.

Q.     "First food preparation assembly," that's not a term you used around the office, correct?

A.     No.

. . .

Q.     But you've never used the term before?

A.     I have not.

Q.     Have you ever used the term "first food preparation assembly before?"

A.     No.

Q.     All right.  Have you ever used the word "steam assembly" before?

A.     No.

Q.      The term "steam assembly" is not a term of art you're aware of?

A.     No.

Q.     The term "first food preparation assembly" is not a term you are aware of?

A.     Correct.

Def. Resp. App., Ex. 8 at 7-8 (Deposition of Patrick A. Willis).

### 3.   The Court's Ruling

#### a.  Inventor Testimony

With regard to credibility assessments of experts in patent cases, the Supreme Court stated

in *Markman*:

> It is, of course, true that credibility judgments have to be made about the experts who
> testify in patent cases, and in theory there could be a case in which simple credibility
> judgment would suffice to choose between experts whose testimony was equally
> consistent with the patent's internal logic.  But our own experience with document
> construction leaves us doubtful that a trial court will run into many cases like that.
> In the main, we expect, any credibility determinations will be subsumed within the
> necessarily sophisticated analysis of the whole document, required by the standard
> construction rule that a term can be defined only in a way that comports with the
> instrument as a whole.

*Markman*, 517 U.S. at 389.  Mr. Hansen's testimony is in no way inconsistent with the specification and file history in this case, and accordingly the Court will consider it.  Defendants' contention that his Declaration is self-serving and conclusory would be of more concern to the Court were he to define the terms in a away that did not comport with the instrument as a whole.  *See id.*  The Court also takes into account Mr. Hansen's qualifications, including a Bachelor of Science Degree in mechanical engineering and significant experience in the industry, and concludes he is well-qualified as one of ordinary skill in the art of combination oven design.  *See generally* Pl. Resp. App., vol. 1 Ex. A (Hansen Decl. ¶¶ 2-3).

As to Mr. Willis's deposition testimony that he is unfamiliar in common parlance with the disputed claim terms, however, the Court agrees with Alto-Shaam that his testimony is entitled to little weight.  As a review of his deposition transcript makes clear, Mr. Willis has little to no experience in engineering or combination oven design, and pursued a general business degree for two years, but never graduated from college.  *See* Pl. Resp. App. at 1126-1128, vol. 3  Ex. F. Further, Mr. Willis testified that he did not participate in designing the prototype of the combination oven, but only provided the concept to the engineering team, which took the concept and designed the prototype.  *Id.* at 1131-1135.

Finally, the Court will not consider the testimony of Cleveland Range engineer Robert McGhee offered by Alto-Shaam.  As Defendants correctly argue, a review of Mr. McGhee's actual testimony reveals that he did not even provide testimony about a "smoking assembly" or mention the patents involved in this case, but rather discussed a "smoker box assembly."  *See* Def. Resp. Brief at 11.  Accordingly, his testimony is irrelevant.

### b.  Claim Construction

First, while the Court finds that, facially, the disputed claim terms do not appear to connote any *specific* structure, and can be interpreted as describing an apparatus based on the function it

performs, as Defendants have argued, the case law provides that to avoid application of section 112,

¶ 6, the delineation of a particular structure, and the identification of structure separate from its

function, are not required.  *See Lighting World*, 582 F.3d at 1359-60.  Rather, to avoid falling into

the ambit of section 112, ¶ 6, the phrase must be used in common parlance or by persons of skill in

the pertinent art to designate structure, even if the structure described is of a broad or amorphous

class.  *See id.* (to avoid application of "section 112 ¶ 6, *we have not required the claim term to*

*denote a specific structure*.  Instead, we have held that it is sufficient if the claim term is used in

common parlance or by persons of skill in the pertinent art *to designate structure*, even if the term

covers a broad class of structures and even if the term identifies the structures by their function.")

(emphasis added).

Further, the Court's analysis of the case law (*see supra*) reveals that both parties engage in

arguments in an attempt to align this case to those previous cases they perceive are most favorable

to their position regarding the reach of section 112, ¶ 6.  Contrary to Alto-Shaam's argument that

the disputed claim terms in this case are somehow akin to the term "connector assembly" in *Lighting*

*World*, as Defendants correctly point out, the court in that case did not even discuss the term

"assembly," and focused instead on "connector."  *See generally Lighting World*, *supra*.  Thus, while

the overarching principles governing means-plus-function claiming in that case are relevant to the

Court's analysis today, with regard to the term "assembly," Lighting World sheds no light.   With

regard to the case law which Defendants cite to support their argument, the Court discerns that

Defendants omit several key distinguishing factors present in those case.  For example, two key

factors relied upon by the court in *M.I.T.* to ultimately construe "colorant selection mechanism" as

a means-plus-function element, are not present in the instant case.  *See generally M.I.T.*, 462 F.3d

at 1354.  In that case, the court took into account that "the patentee used 'mechanism' and 'means'

as synonyms" in the patent, and that "one dictionary definition equates mechanism with means."

*Id.*  By contrast, the prosecution history of the '668 and '173 Patents lacks any synonymous usage of the terms "assembly" and "means," and the Court is unaware of any dictionary definition equating "assembly" with "means.  In fact, the dictionary definition before the Court defines "assembly" in purely structural terms.

Similarly, several key factors relied upon by the court in *Mas-Hamilton* to construe "lever moving element" and "movable link member" as means-plus-function claim limitations, are not present herein.  First, in *Mas-Hamilton*, the court pointed out that the patentee had "not directed [the] court to any evidence demonstrating the district court erred in determining that the term 'lever moving element' lacks a reasonably well understood meaning in the relevant lock art[]" and "there was no evidence that 'movable link member' has a well-understood meaning in the art."  156 F.3d at1213-15.  By contrast, in this case Alto-Shaam has introduced into the record named inventor William Hansen's testimony that to one skilled in the art of combination oven design, the disputed claim terms connote structure, as well as a dictionary definition of "assembly" from which the Court readily concludes that the term is defined as a structure.  Further, as highlighted by the *Lighting World* court in distinguishing *Mas-Hamilton*, the prosecution record showed that the patentee in that case, unlike the patentee in *Lighting World*, had used the terms "element," "member," and "means" interchangeably, and in the patent itself the patentee described the "lever moving element" and the "movable link member" as the "[m]eans . . . for" moving the lever, and the "[m]eans . . . for releasably maintaining the pivotable lever in a position substantially disengaged." *Lighting World*, 382 F.3d at 1363.  Again, no such evidence that the applicant used the disputed terms interchangeably with "means" or "means for" has been introduced in this case.

*Welker Bearing*, where the Federal Circuit found the phrase "mechanism for moving said finger" subject to the means-plus-function limitation, is also distinguishable.  "Mechanism," which was not modified, is different from "assembly" in this case, which is modified.  Further, unlike in

*Welker Bearing*, Mr. Hansen, one skilled in the art of combination oven design and engineering, testified that such language includes a structural component. *Contrast* Pl. Resp. App. at 17 (Hansen Decl.) *with Welker Bearing*, 550 F.3d at 1096-97. ("If claim 1 of the '254 patent had recited, e.g., a "finger displacement mechanism," a "lateral projection/retraction mechanism," or even a "clamping finger actuator," this court could have inquired beyond the vague term "mechanism" to discern the understanding of one of skill in the art. *If that artisan would have understood such language to include a structural component, this court's analysis may well have turned out differently*.") (emphasis added). Here, the Court has been able to inquire beyond the term "assembly" to determine that an artisan understands the language to have a structural component. Finally, *Welker Bearing* is distinguishable because, as Alto-Shaam points out, in that case, "the limitation used the term 'for' – one half of the phrase 'means for' that is 'part of the classic template for functional claim elements . . . [that] has come to be closely associated with means-plus-function claiming.'" Pl. Resp. Brief at 7 (quoting *Lighting World*, 382 F.3d at 1358). No such language appears in Claim 11 or Claim 1.

Further, while Defendants argue that Mr. Hansen's testimony supports application of means-plus-function limitations, since his "view would encompass every conceivable structure for performing the functions recited in the claim [and] Plaintiff is not entitled to such a construction[,]" (Def. Resp. Brief at 7) (citing *Mas-Hamilton*, 156 F.3d at 1214), the Court is mindful of the principles enunciated in *Lighting World*, where the Federal Circuit held that section 112, ¶ 6 is not implicated "even if the term covers a broad class of structures and even if the term identifies the structures by their functions." *See Lighting World*, 382 F.3d at 1359-60 (citations omitted). Contrary to Defendants' argument, that the disputed claim terms are understood to one skilled in the art as including "a number of component pieces fitted together to form a whole"(*see* Hansen Decl.

**Memorandum Opinion and Order - Page 28**

¶ 28) capable of performing various function set forth in the patent does not automatically bring the claim terms at issue within the ambit of section 112, § 6.  *See id.*[6]

Also significant on this point is the Federal Circuit's rejection in *Lighting World* of the district court's decision to apply section 112, ¶ 6, which the Federal Circuit characterized as "unduly restrictive," as it was based on testimony of a defense expert that the term "connector" "encompasses 'at least a single infinity of possible devices' and that the term 'would not provide [him] or others of ordinary skill in lighting fixture art with sufficient structural information to put [him] on notice as to what device or component would read on the claim element.'"  382 F.3d at 1359. The Federal Circuit rejected the premise "[i]mplicit in [the defense expert's] testimony" "that in order to be regarded as structural for purposes of section 112, ¶ 6, a claim limitation must identify a specific structure and not use a generic term that includes a wide variety of structures."  *Id.*  This faulty premise is the basis of Defendants' argument that Mr. Hansen's testimony supports means-plus-function limitations in this case. As in *Lighting World*, this Court rejects the premise upon which Defendants' argument hinges as "unduly restrictive."  *See Lighting World*, 382 F.3d at 1359.[7]

---

[6]Although the Court has made a finding that Patrick Willis is not a person of skill in the art of combination oven design (*see supra*), even assuming *arguendo* that the Court were to consider his testimony that he is not familiar with the terms "first food preparation assembly" and "steam assembly" (*see* Def. Resp. App., Ex. 8 at 7-8 (Willis Depo.)), the Court would nevertheless reach the same conclusion based on the entire record that Defendants have failed to rebut the strong presumption that section 112, ¶ 6 does not apply. Moreover, the Court notes that Mr. Willis does not provide any testimony regarding the disputed claim term "smoking assembly."

[7]Similarly, the Court rejects Defendants' argument that named inventor Janus Bartelick's deposition testimony regarding the term "first food preparation assembly" is effective to rebut the presumption against means-plus-function claiming.  To review, Mr. Bartelick testified that "first food preparation assembly" could be any structure that performs the role of convection or combination steam and convection cooking in the combination oven.  *See* Def. Opening App. at 152-53.  Whether a "first food preparation assembly" could cover a broad class of structures is not the relevant inquiry.  *See Lighting World*, 582 F.3d at 1359-60 (to avoid application of "section 112 ¶ 6, *we have not required the claim term to denote a specific structure.* Instead, we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art *to designate structure*, even if the term covers a broad class of structures and even if the term identifies the structures by their function.") (emphasis added).  At a minimum, Mr. Bartelick's testimony indicates that to one skilled in the art of combination oven design, the disputed claim term designates structure.

The Court also considers the dictionary definition of "assembly" introduced by Alto-Shaam. *See generally Lighting World*, 382 F.3d at 1360 (courts are encouraged to look "to the dictionary to determine if a disputed term has achieved recognition as a noun denoting structure, even if the noun is derived from the function performed.").[8]  Alto-Shaam has submitted the definition of "assembly" contained in the SHORTER ENGLISH OXFORD DICTIONARY 133 (5th ed. 2002).  *See* Pl. Resp. App. at 1105-1107 (defining "assembly" as "a collection of objects; *esp.* a number of component pieces fitted together to form a whole; a device consisting of numerous parts."); *see also* THE NEW OXFORD AMERICAN DICTIONARY 95 (2001) (defining "assembly" as "a unit consisting of components that have been fitted together: the tail assembly of the aircraft").  Clearly this definition describes structure (albeit not a specific structure), and cannot be said to be a "nonce word" or a "verbal construct" that is "simply a substitute for the term 'means for.'" *Lighting World*, 382 F.3d at 1360.    Further, it is significant that the *Lighting World* court looked to whether the disputed claim term was "understood to describe structure" in general, not *a* structure. 382 F.3d at 1360.  To reiterate the court's reasoning in not applying section 112, ¶ 6:

> [W]hile it is true that the term "connector assembly" does not bring to mind a particular structure, that point is not dispositive. What is important is whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term "means for."

---

[8] "*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language." *Tidel Eng'g L.P. v. Fire Kin Inter'l, Inc.*, 613 F.Supp.2d 823, 833 (E.D. Tex. 2009) (internal citation omitted).

*Id.*; *see also id.* (citing cases where the court rejected arguments that "broad" terms such as 'digital

detector,' 'eyeglass hanging member,' 'reciprocating member,' and 'sealingly connected' joints

trigger section 112 ¶ 6.") (internal citations omitted).

In short, having considered the entire record in the context of the applicable law, the terms

"first food preparation assembly," "smoking assembly," and "steam assembly," in the context of

Claim 11 of Patent '668 and Claim 1 of Patent '173 connote a sufficient degree of structure to one

of ordinary skill in the art to avoid section112, ¶ 6.[9]   Accordingly, the Court concludes that

Defendants have failed to rebut the presumption that section 112, ¶ 6 does not apply to the disputed

claim terms..

In reaching this decision, the Court additionally takes into account that the presumption

against construing an element as means-plus-function arises from the premise that section 112, ¶ 6

provides the patentee the option of drafting the patent in the means-plus-function format. *See*

*Greenberg*, 91 F.3d at 1584.  It appears to the Court that if the patentee had wished to exercise the

option to invoke section 112, § 6, the patentee would have done so, and there is nothing in the record

to suggest that patent counsel intended to claim in means-plus-function form.  *See generally*

*Unidynamics Corp. v. Automatic Prods. Intern., Ltd.*, 157 F.3d 1311, 1319 (Fed. Cir. 1998),

*abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa*, 543 F.3d 665 (Fed. Cir. 1998) (use

of the term "means" generally shows that the patent applicant has chosen the option of means-plus-

---

[9]In reaching this decision, the Court has taken into account Defendants' argument that Alto-Shaam cites to portions of Claim 1 and Claim 4 of the '668 Patent to support its assertion that the disputed claim terms in Claim 11 recite sufficient structure and makes similar arguments regarding the '173 Patent.  Def. Resp. Brief at 6 ("By citing Claim 1, Plaintiff tacitly admits that Claim 11 does not recite sufficiently definite structure to avoid the application of 35 U.S.C. § 112, ¶ 6.") While the Court is concerned with the disputed claim terms as used in Claim 11, nothing prevents the Court from viewing the instrument as a whole. *See generally Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1295 (Fed. Cir. 2005) ("claim terms are presumed to be used consistently throughout the patent, such that the usage of a term in one claim can often illuminate the meaning of the same term in other claim").

function format invoking section 112, ¶ 6). This case is therefore distinguishable from *Welker Bearing*, where the applicant "chose to express ['mechanism for moving said finger'] as a 'means or step for performing a specific function without the recital of structure, material or acts in support thereof.'" 550 F.3d at 1096-97 (quoting 35 U.S.C. § 112, ¶ 6).

## IV.

### Conclusion

Based on the foregoing, the Court concludes that Defendants have failed to overcome the presumption that section 112, ¶ 6 does not apply to the claim limitations at issue in Claim 11 of the '668 Patent and Claim 1 of the 173 Patent. *See generally Lighting World*, 382 F.3d at 1358. As such, the Court construes the following limitations of the '668 Patent and the '173 Patent according to their ordinary meanings.[10]

1.    In Claim 11 of the '668 Patent, "**a first food preparation assembly** operable to prepare raw food product using steam and at least one of radiating heat and forced air convection" means "a number of component pieces fitted together to form a whole capable of cooking food using one cooking process – in this case convection heat, steam, and/or radiant heat – before a second food preparation process, such as smoke, is engaged to continue the cooking process";

2.    In Claim 11 of the '668 Patent, "**a smoking assembly** configured to deliver heat to an aromatic smoke producing media that emits smoke into the heating cavity in response to the delivered heat" means "a number of component pieces fitted together to form a whole capable of delivering heat to an aromatic smoke producing media";

---

[10]*See Phillips*, 415 F.3d at 1312-13 (words of a claim "are generally given their ordinary and customary meaning, [which] . . . is the meaning that the [words] would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.") (internal quotation marks and citations omitted).

3.      In Claim 1 of the '173 Patent, "**a steam assembly** selectively providing steam into the interior to prepare food . . . the steam assembly comprising a **steam producing assembly** capable of delivering liquid across the heating element that transforms the liquid into steam that is delivered to the interior of the heating cavity" means:

a.      "**a steam assembly**" -- "a number of component pieces fitted together to form a whole capable of providing steam into the interior to prepare food;" and

b.      "**steam producing assembly**" – "a number of component pieces fitted together to form a whole capable of delivering liquid across the heating element which transforms the liquid into steam."

4.      In Claim 1 of the '173 Patent, "**a smoking assembly** selectively delivering smoke into the interior independently of the first food preparation assembly" means, "a number of component pieces fitted together to form a whole capable of selectively delivering smoke into the interior independently of the first food preparation assembly".


**SO ORDERED** this **7th** day of **June, 2010.**


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**


**Memorandum Opinion and Order - Page 33**